ERNEST A. ARNOLD, RESPONDENT, v. BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, APPELLANT.—101 S. W. (2d) 729.

Kansas City Court of Appeals. January 11, 1937.

*Lamkin James* for respondent.

*Harold C. Heiss, Edward E. Naber* and *Johnson & Bacon* for appellant.

SPERRY, C.—The suit was on a benefit certificate No. H 423381, issued to plaintiff by defendant society September 1, 1928, in the principal amount of $4000. This was really a transfer by plaintiff of a $1500 certificate, previously held, to the certificate sued on. The certificate provided for full payment in case the holder, plaintiff, should suffer "the total or permanent loss of sight of an eye." Judgment below was for plaintiff for full amount, and this appeal is duly prosecuted.

On February 28, 1934, while firing an engine, in his regular course of employment, plaintiff was struck in the left eye by a particle of glass which was removed by a doctor procured by the Alton Railroad, employer. Thereafter, he was treated and examined by a large number of doctors, some having been employed by the railroad company, some by this defendant, and some by plaintiff. The evidence of some of said doctors, testifying for defendant as well as for plaintiff, and the evidence of plaintiff established permanent blindness in the left eye, under the rule laid down by this court in Mulcahey v. Brotherhood of Railroad Trainmen, 79 S. W. (2d) 759, 1. c. 765, when such evidence is viewed in the light most favorable to plaintiff. Therefore, the demurrer on this point, urged by appellant below, was properly ruled by the trial court.

Defendant contends it is a fraternal benefit association within the meaning of our statutes and that all representations made to it by plaintiff in procuring the certificate in question were warranties and not merely representations, citing Elliott v. Grand Lodge, Brotherhood of Railway Trainmen, 95 S. W. (2d) 829, 1. c. 832, a case decided by this court. We do not think it necessary in this case to determine this point. We shall, for our purposes, assume defendant to be a fraternal benefit association without so holding.

Defendant pleaded that plaintiff represented in his application for the certificate in question that he was born September 12, 1889, which, if true, would have made his age at that time under forty years; that its constitution and by-laws did not permit the issuance of this certificate to an applicant after his fortieth birthday; that, in truth and in fact, plaintiff was born September 12, 1887, and was more than forty years of age when the application was made and when the certificate was issued; and that but for said false representation, which we shall treat as a warranty, said certificate would not have been issued. This was an affirmative defense and the burden was on defendant to establish by the greater weight of the evidence that plaintiff was born on September 12, 1887, and not on September 12, 1889. [Collins v. The German-American Mutual Life Insurance Association of Burlington, Iowa, 112 Mo. 209, 1. c. 211; Houston v. Metropolitan Life Ins. Co., 97 S. W. (2d) 856, 1. c. 861.]

To sustain this proposition defendant introduced the application

of plaintiff, wherein he stated the date of his birth to be September 12, 1889; his application for a previous certificate of disability showing date of birth to be September 12, 1887; and letters and correspondence wherein his birth was represented by plaintiff to have been September 12, 1885. It then introduced the record of births and baptisms of Trinity Lutheran Church of Clarks Fork, Missouri, which record was identified by the minister who was its custodian, and who testified that the record was kept according to the laws and customs of the church. The record was admissible as evidence of what it purported to show under the rules laid down in Collins v. The German-American Mutual Life Ins. Assn., *supra,* and as stated in Section 1665, Revised Statutes Missouri 1929.

It is claimed by defendant that said church record proved conclusively that plaintiff was born September 12, 1887, and was baptised March 24, 1888. The record tended to prove this fact. The true rule is that such records are not conclusive of the point in question but are, like any other record, such as a birth certificate, family Bible or other evidence such as the oral testimony of those who have personal knowledge of the event, merely *evidence* of the thing sought to be established. It must be considered with all other evidence in the case on the point. [Shaw v. American Ins. Union, 33 S. W. (2d) 1052, l. c. 1055; Johnson v. Missouri Ins. Co., 46 S. W. (2d) 959, l. c. 960.] Nor does the application in this case bind plaintiff adversely and conclusively on the theory that he is conclusively bound by his own written instrument, for the date given in the application is alleged by him to be correct and defendant claims it is incorrect. [Elliot v. Grand Lodge, etc., 95 S. W. (2d) 829, l. c. 834.]

Plaintiff introduced the evidence of witness Conrad, who testified that he was an official of the local lodge of defendant when the application was submitted, and that defendant, at that time, requested him, as its agent, to examine a family Bible in the possession of plaintiff to determine date of birth of plaintiff. He testified, without objection, that, upon instructions of defendant, in August of 1929, he went to plaintiff's home and examined the family Bible exhibited to him by plaintiff, and that said Bible showed plaintiff's name and the date of birth of plaintiff as therein recorded was September 12, 1889. Defendant called witness Montgomery, who identified an affidavit made by him in 1929, when the application for the certificate sued on was under consideration. This affidavit was introduced by defendant; the witness stated he had examined a Bible at the request of plaintiff, and that the date of birth of plaintiff as therein recorded was September 12, 1889; and said affidavit was to the like effect.

Whether this affidavit, the evidence of Montgomery, or that of Conrad, was competent or would have been admissible, if properly objected to, is not before this court. A part of said evidence was intro-

duced by defendant and none of it was objected to by defendant. There was some other evidence tending to prove date of birth as of September 12, 1889. The family Bible was not in evidence and it appears to have been in the keeping of a brother of plaintiff from whom it was borrowed in 1929, and thereafter returned to him. Therefore, it was not in the possession of plaintiff at the time of trial. Thus the case is not within the rule where evidence under control of plaintiff must be produced by him or considered against his interests. [Burridge v. New York Life Ins. Co., 211 Mo. 158, l. c. 175.] The record of the church was evidence tending to establish date of birth as stated in the application. This evidence was not undisputed but was contradicted by other evidence in the case and it was therefore a question for the jury. It is not a case falling within the exception to the general rule as set out in Johnson v. Missouri Ins. Co., *supra,* where such documentary evidence stands unimpeached and undisputed. The jury has resolved the point against defendant, and its verdict cannot be disturbed on appeal. [Mack v. Western & Southern Life Ins. Co., 53 S. W. (2d) 1108, l. c. 1109; Hartmann v. Knights and Ladies of Security, 190 Mo. App. 92.] This court can only determine whether there was any substantial evidence in the case; it is for the jury alone to determine its weight. [Clark v. Atchison & Eastern Bridge Co., 62 S. W. (2d) 1079.]

It may be said that the evidence of a witness who merely *saw* a Bible and relates its contents is not sufficient to raise a controversy; but defendant, in 1929, after calling the matter of conflicting dates of birth as given by plaintiff in other applications made to it, to the attention of plaintiff and raising a question as to plaintiff's eligibility for the insurance applied for, suggested that an affidavit be made by a person to whom the family Bible should be exhibited, and said affidavit should be forwarded to it as proof of his age. This was done, as shown by evidence of Montgomery who testified for defendant. The affidavit was also in evidence, as were letters by defendant corroborating this procedure. Defendant also had sent its agent, witness Conrad, to check on the Bible. The affidavit and the report of Conrad were considered sufficient proof by defendant at that time and we see no reason for holding that the same facts and documents introduced in evidence at the instance of defendant, should not be sufficient, if believed by the jury, to justify its finding in favor of plaintiff on this controverted question.

Defendant pleaded that there had been a settlement of this claim and that if it is liable in any manner, said liability had been fully settled and paid, and as proof thereof introduced in evidence a check in words and figures as follows:

<table>
<tr><td rowspan="6" style="writing-mode: vertical">Brotherhood of Locomotive Firemen and Enginemen.</td><td rowspan="6" style="writing-mode: vertical">D. B. Robertson, International President.</td><td colspan="2">

"Brotherhood of Locomotive
"FIREMEN AND ENGINEMEN

"B. L. F & E. (Trade mark)

"No. 879, Series M

"ACCIDENT
"INDEMNITY FUND

"Cleveland, Ohio, May 25, 1934
</td></tr>
</table>

"Brotherhood of Locomotive

"FIREMEN AND ENGINEMEN

"B. L. F & E. (Trade mark)

"No. 879, Series M

"ACCIDENT
"INDEMNITY FUND

"Cleveland, Ohio, May 25, 1934

"PAY TO THE ORDER OF   Ernest A. Arnold   &   $62.85

"B. of L. F. & E.   . . .   62 DOL's   85 CTS

"Valid when countersigned by A. Phillips, General Secy.-Treas.,
or Timothy Shea, Asst. President.

"To THE CLEVELAND TRUST COMPANY)
   "MAIN OFFICE     )    Countersigned
"6-68   CLEVELAND, OHIO    6-68)
          "A. P. Phillips,
        "GENERAL SECY.-TREAS."

On the back thereof, over the indorsement signature of plaintiff appears the following, printed thereon:

         "Accident Claim No. 7060
"This check received of the Brotherhood of Locomotive Firemen and Enginemen.

"In full compromise, payment, satisfaction, discharge, and release of any or all claims that I myself, my heirs, executors, administrators, assigns or beneficiaries now have or may hereafter have against said Brotherhood under Policy No. 7155 or for on account of injuries sustained by me on or about Feb. 28, 1934 and any loss that may hereafter result from said injury.

         "Ernest A. Arnold."

Plaintiff denied in his reply that said check was in payment of any claims growing out of the policy sued on. The evidence is undisputed that plaintiff held two policies with defendant, the one sued on being in the beneficiary fund and numbered H 423381, and the other being an accident indemnity policy providing for weekly indemnity and which was numbered 7155. Letters from defendant to plaintiff, introduced as exhibits in the case, showed that the check in question was given in settlement of another and different claim from that sued on, said letters specifically referring to "A. I. Claim No. 7060," and to plaintiff's "claim for benefits from the Accident Indemnity Department." The check itself, on its face, shows it is drawn on the "Accident Indemnity Fund," whereas the evidence disclosed

that this suit is on a policy No. H 423381, and that claims on this type of policy are paid out of the "Beneficiary Fund," as recited in the policy itself, which was pleaded by plaintiff. Other evidence also amply corroborated this. The receipt on the back of the check recites that it is given in settlement of claim under policy 7155, and contains no reference to policy H 423381. No claim was ever made by defendant prior to suit, as disclosed by careful examination of all correspondence between the parties, that this check was considered by it as being remotely connected with the claim on account of the policy sued on. The record discloses a letter from defendant to plaintiff, dated May 17, 1934, and headed: "Re, A. I. Claim 7060;" the check in question is dated May 25, 1934; and under date of June 7, 1934, defendant acknowledges receipt "of form on connection with your Disability Claim," and refers plaintiff for examination to Dr. Mead. The letter is headed: "Re: Dis. Claim 2254." It is significant that defendant did not indignantly charge in this letter that the matter had been settled. Furthermore, defendant voluntarily paid in to the clerk of the court in this case "$407.87, being the total amount of all beneficiary and disability assessments" paid by plaintiff on the policy sued on, which is strongly persuasive that there had been no compromise and release. The jury found this issue, under the evidence, against defendant, as, indeed, would almost any court or jury. There was an issue of fact as to what the release was given for. It showed on its face that it was not given to release the claim sued on, and defendant was wholly unfair in attempting to trick the plaintiff out of court on such a defense. The evidence discloses that there was, at that time, no *bona fide* dispute as to plaintiff's right to payment on the policy sued on. No form making demand thereon was submitted until after the date of the check. Therefore, there was no controversy in good faith on May 25, 1934, over liability of defendant on the claim under policy H. 423381, the subject of this suit. Hence, the release pleaded was not, and could not, be a release of this claim, which was the issue tendered by plaintiff's reply. [Harms v. Fidelity & Casualty Co. of New York, 172 Mo. App. (K. C. Court of Appeals) 241, l. c. 249; Sappington v. Cent. Mut. Ins. Assn., 229 Mo. App. (K. C. Court of Appeals) 222, l. c. 229, 77 S. W. (2d) 140.] For there to have been a valid release there must have been an agreement reached between the parties, a meeting of minds on the subject of the release. [Wayland v. Pendleton et al., 85 S. W. (2d) 492, l. c. 493.] Such a meeting of minds could not occur in a dispute that did not exist. No tender back of money received under check was necessary since it was not received for, or in settlement of, the claim sued on.

It is contended that plaintiff's one and only instruction is fatally defective because it attempts to cover the entire case and direct a verdict for plaintiff, but ignores the defense of release which was pleaded

and evidence thereof offered. Release is an affirmative defense and must be especially pleaded, and defendant must bear the burden of proof. [Nelson v. Kansas City Pub. Serv. Co., 30 S. W. (2d) 1044, l. c. 1048.] While the law is as claimed by defendant, yet the defect may be, and is, cured if said defense is set out in some other instruction of plaintiff, or in some instruction of defendant. [Thomas v. American Central Ins. Co., 297 S. W. 982, l. c. 984.] The distinction in this respect as between the omission of a necessary element of plaintiff's case and the omission of a matter of affirmative defense, is pointed out in Thomas v. American Central Ins. Co., *supra*. In the case at bar, the defendant offered and the court gave instruction No. D 10, which fully covered the defense of release. The error complained of is cured.

Finally, the judgment is attacked because it is said the verdict is the result of bias, prejudice and passion and is not supported by the evidence or the weight thereof. We have necessarily reviewed most of the evidence in passing upon the points heretofore ruled. No error was committed by the trial court that could form the basis of a claim of passion and prejudice. No complaint is made of the attitude or conduct of any juror, or of counsel for plaintiff, or of any officer of the court. We cannot find passion when the record is as cold as any abstract principle of law. [Clark v. Atchison & Eastern Bridge Co., 62 S. W. (2d) 1079.] Appellant draws attention to the unreasonableness of the accident causing the disability; but the evidence on the manner in which the disability occurred is not even material under the terms of the policy. The only question is whether such disability exists. The judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.