Earl L. BRISSETTE, Plaintiff-Appellant,

v.

MILNER CHEVROLET COMPANY, Inc., a Corporation, et al., Defendants-Respondents.

No. 34348.

Missouri Court of Appeals, St. Louis District.

March 28, 1972.

William R. Kirby, St. Louis, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Joseph H. Mueller, Murphy & Kortenhof, Ben Ely, Heneghan, Roberts & Godfrey, George F. Kosta, W. Munro Roberts, Jr., St. Louis, for defendants-respondents.

SIMEONE, Judge.

This case is one of first impression in this State. It presents unique issues in the expanding field of products liability.[1] The principal issues raised are: (1) whether the failure to produce the tire in a products liability case is essential in the proof of the plaintiff's case; (2) whether the plaintiff-appellant may be permitted to introduce expert testimony regarding an alleged defect in an automobile tire which is claimed to have failed, causing the plaintiff's injuries, when the plaintiff is unable to produce the allegedly defective tire for examination; and (3) whether a directed verdict, under the circumstances, at the close[2] of the plaintiff's opening statement was proper.

Following the plaintiff's opening statement, the trial court granted defendants' motion for a directed verdict, ruling that the plaintiff's offer of proof made during the course of argument on defendants' motion, was rejected "first, because the object was not made available to the defendants, and secondly, that a case could not be made even in the absence of this, by expert testimony."

According to the record, on July 25, 1964, the plaintiff-appellant went to Milner Chevrolet Co., Inc. (hereinafter Milner) and advised the company that he wanted to purchase a two-door Impala hardtop with certain accessories, including four-ply tubeless tires. He was informed that he

---

1. See Comment, Products Liability in Missouri: Past, Present and Future, 14 St. Louis U.L.J. 485; Keener v. Dayton Elec. Mfg. Co., Mo.Sup., 445 S.W.2d 362.

2. Because of the nature of the proceedings as detailed *infra*, the ruling technically did not come at the *close* of the opening statement.

could have the four-ply tires but at an extra charge, and that the company did not have the car in stock but that one would be located.

On July 29, 1964, the automobile was delivered to the plaintiff. It was equipped with two-ply tires with four-ply rating. According to the plaintiff, the automobile was driven carefully and almost exclusively by him and the auto had only about 900 miles on it as of August 29, 1964.

On that date, as plaintiff alleged in his pleadings, he was driving the automobile on Highway 61 in Ste. Genevieve County when the left front tire "did then and there fail and collapse" causing the automobile to skid and spin across the highway eventually landing in a ditch. As a result, plaintiff suffered various injuries which required hospitalization.

Some three years later, on September 14, 1967, plaintiff filed his petition in the Circuit Court of the City of St. Louis seeking damages against Milner; General Motors Corporation, the manufacturer of the automobile (hereinafter General Motors); and General Tire and Rubber Company, the alleged manufacturer of the tire (hereinafter General Tire). The petition was framed on both theories of negligence and breach of warranty.[3]

During the pre-trial stage of the proceedings in April, 1968, the plaintiff testified in a deposition that after the accident he had possession of the tire for a period of time but turned it over to his insurance company, Covenant Security Insurance Company, in connection with his claim for property damage. Subsequently, interrogatories and supplemental interrogatories were filed upon plaintiff, and in answer to General Tire's supplemental interrogatories, plaintiff indicated that the tire had "no physical tests," that the tire had been in the possession of the insurance adjuster and

then in the possession of Covenant. Plaintiff's answers to General Tire's second supplemental interrogatories later filed, indicated that the tire had been examined by Rip's Garage and Service. Later, and on the date of trial, March 15, 1971, the plaintiff, by way of amended answers to General Tire's second supplemental interrogatories, indicated that the tire had been examined by plaintiff, his father Louis Brissette, Mr. Adrian Meyer and Bernell Ruebsam of Rip's Garage, and that they made an examination within two weeks after August 29, 1964.[4]

Prior to the trial in October, 1970, General Tire filed a motion to produce the tire. Plaintiff, however, was unable to comply with the motion.

The cause ultimately came to trial in the circuit court on March 15, 1971.

The opening statement of the plaintiff reveals that on July 25, 1964, the plaintiff went to Milner and advised them that he wanted a two-door Impala hardtop with certain accessories including four-ply tires; "that these were to be tubeless tires." The salesman told him that he could have the four-ply tires at an extra charge; that they did not have the car in stock but that they would locate one.

The following then occurred on the opening statement:

Mr. Kirby (plaintiff's counsel): "The evidence will show that as far as the automobile was concerned, up until August 29, 1964, it had approximately nine hundred miles on it; that he had not run into any curbing with the automobile; that he had not hit any chug [sic] holes with the tires on the car or he hadn't struck any rocks or obstacles with it to where there might be bruising or damaging of the tires at all."

---

3. The count in negligence was later stricken and the cause proceeded only on the breach of warranty count.

4. The answers to the interrogatories indicate that between June 21, 1968 and November 15, 1969 the plaintiff did have possession of the tire.

At that point the attorney for General Tire objected to the plaintiff's attorney "making any mention or anything about any inspection of the tire" on the basis that the plaintiff was "unable to produce the tire for inspection by General Tire" and hence the plaintiff is "foreclosed from putting on any evidence regarding any inspection they may have had of the tire."

After a discussion out of the hearing of the jury, the court discharged the jury following which the attorney for General Tire elaborated on his earlier motion to preclude plaintiff's attorney from "mentioning in his opening statement that he will produce evidence of expert witnesses to show a defect existed in the tire. . . ." The plaintiff then made an offer of proof. His offer showed that if permitted to make an opening statement that the plaintiff, under the provisions of his insurance policy to cooperate, delivered the tire to the adjuster for the Covenant Security Insurance Company in November, 1964, and that since that time he has not had the tire in his possession; that some three years later a letter was sent to Covenant attempting to locate the tire and any reports of inspection but that no answer was ever received. He stated also that the tire was not "destroyed for the purpose of destroying evidence" and that this information was given when his deposition was taken on April 19, 1968. He also stated that the plaintiff, his father, one Adrian Meyer and Bernell Ruebsam the owner of Rips Garage, saw the tire and that Mr. Ruebsam "has had experience in handling, selling, changing, repairing tires since 1938; that he is thoroughly familiar with the construction of tubeless tires; that he examined this tire and he is in a position to describe the condition of the beads of the tire; that it would be his opinion that the condition of the bead . . . would be a defect that cause [sic] the tire to come off of the rim. . . ." As far as the other witness, Adrian Meyer, is concerned, the offer of proof showed that he also had examined the tire while still at the garage. Mr. Meyer had worked one year in a service station and had repaired and changed over two thousand tires, of which one thousand had gone flat or had some type of defect or blowout—or something similar, and that he had examined the tire and that it was his opinion that the defect was due to a defect in manufacture.

The attorneys for the defendants objected to the offer of proof and moved for a directed verdict.

The court then rejected the offer of proof ". . . first, because the object was not made available to the defendants, and, secondly, that a case could not be made even in the absence of this, by expert testimony. It follows that I will sustain the Motion for a Directed Verdict."

In effect, therefore, although the manner of proceeding was somewhat unusual in that the opening statement was in reality in two parts, the directed verdict was granted at the termination of the opening statement.

The plaintiff complains that the trial court erred in sustaining the defendants' motion during the opening statement.

■ An examination of the cases from this and other states shows that there are two situations in which a trial court may direct a verdict in favor of the defendant on the plaintiff's opening statement: (1) when counsel makes an admission which affirmatively demonstrates as a matter of law that his client has no cause of action or is not entitled to recourse, Wood v. Wells, Mo.Sup., 270 S.W. 332; Oscanyan v. Winchester Repeating Arms Co., 103 U.S. 261, 26 L.Ed. 539, and (2) when counsel in his statement recites facts which would not as a matter of law be sufficient when established by evidence to make a submissible case, and plaintiff's counsel admits that he has stated all his material evidence, Hays v. Missouri Pac. R. Co., Mo. Sup., 304 S.W.2d 800. In this latter situation there are definite principles which narrow the situation when a verdict may be directed. Such action by the trial court

"should be taken with caution." Hays, *supra.* Directing a verdict at the close of an opening statement "is an extreme measure and should be exercised cautiously and only in a clear case." National Dairy Products Corp. v. Freschi, Mo.App., 393 S.W.2d 48, 52. It should not be done because of the mere failure to state facts sufficient to constitute a submissible case unless counsel affirmatively admits that no additional facts will be shown by the evidence. Butcher v. Main, Mo.Sup., 371 S.W.2d 203, 206. Counsel should be given wide latitude in making an opening statement for it is only an outline of his anticipated proof and not a detailed statement. The rules are succinctly stated in Hays, *supra,* at 804:

". . . By reason of these well accepted and basically sound principles, it is readily apparent that mere insufficiency of the opening statement to recite facts which show that plaintiff's anticipated evidence would, as a matter of law, present a submissible case, is not of itself standing alone sufficient justification to stop the case at that stage and direct a verdict for the defendant . . . However, when it affirmatively appears that the whole of plaintiff's case has been fully and completely set forth in the opening statement, and it clearly and definitely appears, as a matter of law, that proof of all the facts so recited, together with all reasonable inferences in favor of plaintiff, would not result in a submissible case, then the trial court may direct a verdict for defendant. . . ."

See also Schwartz v. Fein, Mo.App., 471 S.W.2d 679.

The proposition that the granting of a directed verdict in favor of defendant is to be made with caution, that it should not be granted at the close of an opening statement because of a failure to state facts sufficient to make a submissible case, unless it clearly and definitely appears as a matter of law that proof of all the facts so re-cited would not result in a submissible case, and unless counsel affirmatively admits that no additional facts will be shown by the evidence, indicate that the plaintiff should be given an opportunity to develop evidentiary facts at trial. The plaintiff here was not given a full opportunity to develop at trial the facts concerning the proffered witnesses, nor given an opportunity to qualify them. In such circumstances, the plaintiff should be given such opportunity.

The question next to be considered is whether the object—the tire—not being available to the defendants for inspection precludes the plaintiff from having an opportunity to prove a case. On this issue there are no Missouri decisions. The defendants rely principally upon Shramek v. General Motors, 69 Ill.App.2d 72, 216 N.E.2d 244, Williams v. U.S. Royal Tires, La. App., 101 So.2d 488, and Garofalo v. General Motors, 103 Ill. App.2d 389, 243 N.E.2d 691.

*Williams, supra,* held that a petition based on the theory that accident was caused by a tire "blowing-out" did not state a claim under the doctrine of *res ipsa loquitur.* In *Garofalo, supra,* the petition was dismissed for failure to comply with the rules of discovery and the facts did not permit the application of the doctrine of *res ipsa loquitur* in that a defect in the vehicle is not the sole reason the vehicle could have left the highway.

In both cases there was no evidence of specific defects. In such circumstances, without the alleged defective object, no case can be made.

In *Shramek,* the court granted a summary judgment in favor of defendants when the facts indicated that plaintiff, while riding in an automobile, was injured when the left rear tire blew out and the car overturned. The automobile was purchased new and had premium quality tires on it. Plaintiff filed suit claiming a breach of implied warranty. The plaintiff and the owner of the automobile "examined the

tire at the junk yard, but it was not preserved." In granting summary judgment for the defendants the court held that the record conclusively demonstrates that plaintiff will not be able to prove, directly or inferentially, the essential elements of his case; i. e., (1) that the accident which resulted in his injuries was caused by a tire, and (2) that said tire was defective. "Thus, without examination of the tire . . . and without the tire itself or any hope or expectation for its recovery, plaintiff could never prove, directly or inferentially, a case of negligence, breach of warranty or strict liability." Shramek v. General Motors, *supra*, 216 N.E.2d at 247.

In *Shramek* the tire was unavailable for inspection or proof and there was no evidence which was or could be produced concerning the defect in the tire; hence summary judgment for defendants was properly granted. The court's reasoning makes it clear that the absence of the tire alone did not justify summary judgment since the tire was "non-examined" as well as "non-existent." *Shramek* is distinguishable from the case at bar.

While the tire on the Brissette automobile was not available for discovery or for evidentiary purposes, the testimony of several persons is available, subject to the right of cross-examination. If plaintiff's witnesses are permitted to testify concerning the examination of the tire, plaintiff may establish the defect and causation essential to his cause. The availability of testimony relating to examination of the tire distinguishes this case from *Shramek*. In *Shramek* there was no evidence to show any defect in the tire. Moreover, *Shramek* has been distinguished in a series of subsequent decisions which make plain that mere failure to produce the alleged defective product is not fatal to the plaintiff's opportunity to make a submissible case. Nolan v. Shaf Mfg. Co., 128 Ill.App.2d 19, 261 N.E.2d 209; Taylor v. The Carborundum Co., 107 Ill.App.2d 12, 246 N.E. 2d 898; Texaco, Inc. v. McGrew Lumber Company, 117 Ill.App.2d 351, 254 N.E.2d 584.

A case closely in point is Smith v. Uniroyal, Inc., 7th Cir., 420 F.2d 438. In a diversity action plaintiffs sought to recover damages for injuries sustained in an automobile accident which resulted from a defective tire. The jury found for the plaintiffs and defendant moved for judgment notwithstanding the verdict. Defendant contended on appeal that the testimony of an "expert" witness should have been excluded because "the tire was not presented in evidence or made available to defendant for consideration and inspection." The Court of Appeals rejected this contention and held that the testimony of a garage operator who inspected the tire was admissible. The garage operator had operated a garage and service station for twenty-two years during which time he handled and sold tires of several national manufacturers. He testified that he could tell the difference between a tire which has failed from a road hazard and one which has failed from a defect in construction and that he could distinguish between a cut in a tire from a weakening of the fabric or bead. It was not necessary, said the court, that the witness should know the process by which the tire was manufactured or "that it would take no more than a good look to recognize a blowout and not much longer to form an opinion that it resulted from a defect in the tire." Although the parties stipulated that the tire was not preserved, the thrust of the opinion is that a party is not precluded from introducing testimony concerning a defect in the absence of the tire.

The plaintiff has the burden of proving (1) a defect in the tire, (2) that the defect existed when the tire left the manufacturer's control and entered the stream of commerce and (3) that the defect was the proximate cause of the injuries suffered by the plaintiff. But such proof may be made by either direct or circumstantial evi-

dence.[5] The object is not, under the circumstances here, essential to such proof. It is sufficient if there is testimony, subject to cross examination which may tend to show these essentials. The lack of the object—the tire—is a matter going to the weight of the evidence rather than to a complete failure of proof when there is sufficient testimony to indicate what defects existed.

■ Whether an expert witness is competent to testify concerning the description and possible defects in a tire is within the wide discretion of the trial court. The courts of this state have held " '. . . An expert witness is one who by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of deducing correct conclusions. . .' . . . The determination of the question of the qualification of a witness as an expert in the field in which his testimony is sought rests in the first instance in the sound discretion of the trial court and its decision in that respect should not be set aside in the absence of a showing of abuse of discretion." Edwards v. Rudowicz, Mo.App., 368 S.W. 2d 503, 506.

■ The plaintiff was here foreclosed from fully developing the qualifications of the "expert" witnesses when the directed verdict was granted at this early stage of the proceedings. We believe that the plaintiff should be given this opportunity to develop fully the qualifications of the witnesses so that the court, upon trial, may be then in a position to pass upon the competency of the witnesses. The action of the trial court in granting the directed verdict at this early stage was error. Whether the plaintiff's witnesses will be able to state facts and not mere conclusions of law is

a matter which can be more fully developed at trial. In numerous decisions cited by the plaintiff, experts were permitted to give their opinions in similar situations. See, e. g., Demarais v. Johnson, 90 Mont. 366, 3 P.2d 283.

The defendants also contend that the trial court properly ruled that the plaintiff's proffered testimony was inadmissible because the plaintiff failed to explain satisfactorily or account for his inability to produce the tire or because he failed to preserve the evidence and therefore should be held to admit the allegations of defendants that there was no defect in the tire. Further, defendants contend that the plaintiff failed to show a reasonably diligent search for the tire and hence he should be precluded from introducing testimony of the alleged defect.

■ It is true, as our Supreme Court has said, that "the destruction of written evidence without a satisfactory explanation gives rise to an inference unfavorable to the spoliator. . . 'This court has several times given effect to the rule that where a party to a suit has been guilty of spoliation of documentary evidence, he is held thereby to admit the truth of the allegation of the opposite party. . . .' " Garrett v. Terminal R. Ass'n of St. Louis, Mo.Sup., 259 S.W.2d 807, 812; Gaugh v. Gaugh, 321 Mo. 414, 11 S.W.2d 729; Beckman v. Raines, 210 Mo.App. 253, 243 S.W. 192; Pomeroy v. Benton, 77 Mo. 64. However, to give rise to such an admission it must appear that the "circumstances of the act must manifest bad faith. Mere negligence is not enough." McCormick, Evidence, 538. "[I]t is at least necessary that the document be in the party's power to produce. . ." 2 Wigmore on Evidence 185. Where the evidence is not in the plaintiff's possession it is not within the rule that evidence must be produced or considered against his interest. See Arnold

5. See discussions in Rheingold, Proof of Defect in Product Liability Cases, 38 Tenn.L.Rev. 325, 326; Emrock, Pleading and Proof in a Strict Products Liability Case, Products Liability Law, edited by Schreiber and Rheingold at 10:5; Keeton Products Liability Problems Pertaining to Proof of Negligence, 19 Sw.L.Rev. 26, 36.

v. Brotherhood of Locomotive Firemen and Engineermen, 231 Mo.App. 508, 101 S.W. 2d 729, 731.

 The plaintiff in this case was unable to produce the tire either for inspection or to be introduced into evidence. The record shows that the tire was turned over to the office of E. J. Boehne, the adjuster for the Covenant Security Insurance Company which held the plaintiff's insurance policy and which was entitled to subrogation rights. After turning the tire over to the insurance company, plaintiff did not have possession. Plaintiff's attorney did, on November 11, 1967, forward a letter to Covenant in an attempt to locate the tire but the letter was never answered. This effort was a feeble one and a greater effort should have been made and perhaps it is still not too late to do so. But, in any event, there is no indication whatsoever that the plaintiff intentionally and in bad faith refused to produce or destroyed the subject matter, thus precluding the operation of the spoliation rule. See Arnold v. Brotherhood of Locomotive Firemen and Engineermen, *supra;* Smith v. Uniroyal, Inc., *supra;* Maguire and Vincent, Admissions Implied From Spoliation or Related Conduct, 45 Yale L.J. 226.

We do not mean to imply that a plaintiff may, under any and all circumstances, be permitted to introduce testimony to prove a products liability case in the absence of the object. We do not in any manner encourage a party to be lax concerning the preservation of evidence. We do not in any way imply that a party is under no duty to preserve the object for discovery and evidentiary purposes. We only hold that, under the circumstances of this case, the plaintiff should not be deprived of the opportunity of a trial when, at this time, the tire is not available. We have examined and considered all the points in the briefs raised by both parties and conclude the following:

(1) the trial court erred in granting the motions of the defendants for a directed verdict on the opening statement of the plaintiff's counsel and hold that the plaintiff should be given an opportunity to make a case;

(2) that the tire itself is not absolutely essential in order to have an opportunity to prove a breach of warranty;

(3) that the trial court erred in holding that a case could not be made even in the absence of the tire by expert testimony. We hold that the plaintiff should be permitted to attempt to qualify the witnesses who examined the tire and to develop fully such qualifications; and

(4) that, under the facts established, the plaintiff should not be precluded from introducing competent testimony because he is unable to produce the tire.

The judgment is reversed and the cause remanded.

BRADY, C. J., and DOWD, SMITH, WEIER and CLEMENS, JJ., concur.