Vicki **SCHNEIDER**, as Personal Representative of the Estate of Carolyn Schneider, Deceased, Plaintiff/Appellant,

v.

**G. GUILLIAMS, INC., and C & S Heating and Cooling, Inc., Defendants/Respondents.**

No. 72417.

Missouri Court of Appeals, Eastern District, Division Four.

June 30, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 26, 1998.

Application for Transfer Denied Oct. 20, 1998.

Robert H. Pedroli, Clayton, for Appellant.

William J. Magrath, Thomas C. DeVoto, St. Louis, for Respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Vicki Schneider, personal representative of the estate of Carolyn Schneider, appeals from a summary judgment entered against her and in favor of Defendants, G. Guilliams, Inc., and C & S Heating and Cooling, Inc., based upon spoliation of evidence. Appellant also appeals from the court's judgment dismissing certain counts in her petition based on the applicable statute of limitations. Appellant asserts two points of error: (1) the court erred in granting Defendants summary judgment based on spoliation of evidence "in

that the loss of the evidence was accidental and not prejudicial and even a finding to the contrary would only admit an adverse inference"; and (2) the court erred in dismissing Appellant's claims for breach of the implied warranty of fitness for a particular purpose because there was "a warranty extending to future performance and said [claims] related back" to an earlier amended petition. We reverse and remand in part and affirm in part.

In 1984, Herman and Carolyn Schneider [1] (Schneiders) contracted with G. Guilliams, Inc. (Guilliams), to construct their house. Guilliams sub-contracted with C & S Heating and Cooling, Inc. (C & S), to install a wood-burning furnace in the home. The Schneiders moved into their newly constructed house in February 1985. On December 12, 1989, a fire destroyed the Schneiders' home, causing damages in excess of $182,000.

On or about July 19, 1990, the Schneiders filed a petition for damages against Guilliams alleging that Guilliams "negligently and carelessly installed an unprotected single-wall chimney connector in too close of proximity to the wood structural framing members of the ceiling basement thereby creating a fire hazard." The Schneiders also alleged that Guilliams had breached an implied warranty of fitness by delivering to the Schneiders a structure unfit for use as a residence. In a second amended petition filed on or about July 10, 1992, Schneiders added C & S as a defendant, alleging that C & S negligently installed the wood-burning furnace, thereby causing the fire, and also breached an implied warranty of fitness. Defendants, Guilliams and C & S, answered the Schneiders' petition by denying that they were negligent, and, by way of an affirmative defense, alleged that the Schneiders had negligently or contributorily caused the fire by failing to properly care for the furnace.

On or about September 18, 1995, Schneiders filed a third amended petition for damages against Defendants. This petition alleged the following causes of action against Guilliams: Count I–negligence; Count II–

1. Herman and Carolyn Schneider were both killed in an auto accident after bringing suit against Defendants.

breach of implied warranty of habitability; Count III–breach of implied warranty of merchantability pursuant to Section 400.2–314 RSMo 1994;[2] and Count IV–breach of implied warranty of fitness for a particular purpose pursuant to Section 400.2–315. The petition also alleged the following causes of action against C & S: Count V–negligence; Count VI–breach of implied warranty of merchantability pursuant to Section 400.2–314; and Count VII–breach of implied warranty of fitness for a particular purpose pursuant to Section 400.2–315. Defendants filed separate motions to dismiss Counts II, III, IV, V, VI and VII of the Schneiders' petition for failure to state a cause of action and as being time barred by the applicable statutes of limitations. The court ultimately sustained Defendants' motions to dismiss as to Counts III, IV, VI and VII.

Defendants also filed motions for summary judgment as to Counts I, II and V based upon spoliation of evidence. Defendants urged in their motions that no genuine issues existed as to any of the following facts: The Schneiders were insured by the Republic Insurance Company, which paid the Schneiders under the terms of its policy for the damage caused by the fire; having paid the Schneiders, Republic Insurance Company became subrogated to the rights of the Schneiders against Defendants; the Schneiders alleged in their petition against Defendants that they negligently installed the wood-burning furnace, and in particular, negligently installed the components of the flue system, including the flue base, the pipe connector and the flue, which remove combustible materials from the furnace and through the roof of the Schneiders' residence; after the fire, the Schneiders' residence remained under the possession and control of the Schneiders and their insurance carrier; at some point during either the clean-up or during the inspection after the fire, the flue base was discarded and Defendants have never inspected the flue base; the Schneiders and the Republic Insurance Company retained the services of two experts, Mr. Wysong and Mr. Richardson, who were both able to inspect the flue, the pipe connector and the flue base; after Mr. Richardson

examined the flue and pipe connector, these pieces remained exclusively in his possession and under the Schneiders' and Richardson's control; at some point during 1995, Mr. Richardson disposed of the pipe connector and the flue, which were the remaining portions of the furnace system; and, although they requested to inspect the remaining two portions of the system, Defendants alleged that they were unable to examine the pieces because the Schneiders had destroyed, or intentionally spoliated the evidence.

In support of their motions for summary judgment, Defendants asserted that since Republic, the real party in interest, and its retained expert were in control of the flue components, and such expert had intentionally discarded these components, the spoliation doctrine applied, giving rise to an adverse inference against the spoliator. Defendants argued that the proper application of an adverse inference precluded the Schneiders from proving an element of causation necessary for recovery, namely that the cause and origin of the fire was attributable to Defendants.

In support of their motions, Defendants filed portions of depositions from Herman Schneider, homeowner, Curt Panhorst, Senior Claims Adjuster for Republic Insurance Company, and Robert Wysong and Thomas Richardson, Republic's retained experts. They also filed verified documents of correspondence between C & S's attorney, the Schneiders' attorney and Mr. Richardson regarding the whereabouts and availability of the flue components for inspection.

On or about October 31, 1996, the Schneiders filed their response to Defendants' motions for summary judgment based upon spoliation of evidence, asserting that Defendants had failed to meet their burden as required by Rule 74.04 because they asserted facts immaterial to their claim for relief. In its judgment filed on March 14, 1997, the court sustained Defendants' motions for summary judgment on the spoliation issue as to Counts I, II and V. Instead of reciting the facts and reasons for its judgment, the court adopted the facts set forth by Defendants in their motions for summary judgment based on

2. All statutory references are to RSMo 1994 unless otherwise indicated.

spoliation of evidence and adopted Defendants' supporting memoranda of law. In this judgment, the court also made final its orders dismissing Counts III, IV, VI and VII of the Schneiders' petition as barred by the applicable statute of limitations. This appeal followed.

In their first point on appeal, the Schneiders allege that a grant of summary judgment in favor of Defendants on Counts I, II and V for negligence and breach of implied warranty of habitability based on spoliation of evidence was improper. Specifically, they argue the spoliation doctrine does not apply when a non-party accidentally destroys evidence. Moreover, the Schneiders argue that even if a party had intentionally destroyed evidence, at most Defendants would only be entitled to an adverse inference and not summary judgment. Furthermore, the Schneiders urge that the unavailability of the flue components is not "substantially prejudicial" to Defendants' defense in light of the fact that before the pieces were destroyed, they were photographed and examined by experts.

When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.1993). Whether summary judgment is proper is an issue of law, and we need not defer to the trial court's order. *Id.* Accordingly, our review is *de novo. Id.*

For the movant to show he or she is entitled to summary judgment, the movant must establish that there are "no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 377. A genuine issue of material fact exists "where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. The materials must evidence a "dispute that is real, not merely argumentative, imaginary or frivolous." *Id.* However, the key to summary judgment is that the movant demonstrates an undisputed right to judgment as a matter of law; and not simply the absence of a fact question. *Id.* at 380.

When the movant is a " 'defending party,' " he or she "may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly pleaded affirmative defense." *Id.* at 381 (emphasis in original).

" 'Spoliation' is the destruction or significant alteration of evidence." *Baugher v. Gates Rubber Co. Inc.,* 863 S.W.2d 905, 907 (Mo.App. E.D.1993). "In Missouri, if a *party* has intentionally spoliated evidence, indicating fraud and a desire to suppress the truth, that party is subject to an adverse evidentiary inference." *Id.* (citing *Brown v. Hamid,* 856 S.W.2d 51, 56–57 (Mo.1993)) (emphasis ours). Not concerned with whether the opposing party suffers prejudice as a result of the destroyed evidence, the doctrine works only to punish the spoliator. *See Pomeroy v. Benton,* 77 Mo. 64, 86 (1882) ("It is because of the very fact that the evidence of the plaintiff, the proofs of his claim or the muniments of his title, have been destroyed, that the law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrong-doer by the very means he had so confidently employed to perpetrate the wrong."). Specifically, the spoliation doctrine and the resulting adverse inference punishes the spoliators by holding them to admit that the destroyed evidence would have been unfavorable to their position. The adverse inference, however, does not prove the opposing party's case. Instead, the spoliator is left to determine whether any remaining evidence exists to support his or her claim in the face of the inference. *See Furlong v. Stokes,* 427 S.W.2d 513, 519 (Mo. 1968); and *Garrett v. Terminal R. Ass'n of St. Louis,* 259 S.W.2d 807, 812 (Mo.1953).

■ Since the doctrine of spoliation is a "harsh rule of evidence, prior to applying it in any given case it should be the burden of the party seeking its benefit to make a prima facie showing that the opponent destroyed the missing [evidence] under circumstances manifesting fraud, deceit or bad faith." *Moore v. General Motors Corp.*, 558 S.W.2d 720, 735 (Mo.App. E.D.1977). "Mere negligence is not enough." *Brissette v. Milner Chevrolet Co.*, 479 S.W.2d 176, 182 (Mo.App. E.D.1972). However, under certain circumstances, the spoliator's failure to satisfactorily explain the destruction of the evidence may give rise to an adverse inference against the spoliator. *Brown v. Hamid*, 856 S.W.2d 51, 57 (Mo.1993). In other circumstances, "it may be shown by the proponent that the alleged spoliator had a duty, or should have recognized a duty to preserve the evidence." *Morris v. J.C. Penney Life Ins. Co.*, 895 S.W.2d 73, 77–78 (Mo.App. W.D.1995) (emphasis omitted).

Defendants urge that since an expert retained by Republic discarded the flue components, and that expert should have recognized a duty to preserve the components, the spoliation doctrine applies. Defendants also contend that the unavailability of the flue components for their inspection, in light of the fact that Appellant's experts have examined the components, is so prejudicial to them that the only fair result is the application of an adverse inference. We disagree.

Defendants have failed to cite and we could not find any Missouri case which applied the spoliation doctrine to facts in which a non-party destroyed evidence. In his treatise, WIGMORE ON EVIDENCE, Mr. Wigmore explains, by way of example, the reasoning behind limiting the spoliation doctrine to the acts of a party:

> [W]hen A, the defendant in an action by B for slander, bribes a witness to assist in proving a plea of truth as to B's misdoing, A's conduct is some evidence of consciousness that his cause is a weak one; and yet A ordinarily has no personal knowledge, one way or the other, of B's misdeed, so that his belief or consciousness is ordinarily not a mark or a trace of his own past act, but is an impression founded on all

that he has been able to learn by inquiry. Thus if A were a third person, the evidential use of his conduct would amount to little more than using his hearsay assertion, ... Consequently, such evidence would have to be confined to the conduct of *parties in the cause*, since for them it would at any rate be receivable as an admission; for any assertion by an opponent in the cause may be offered against him as an applied admission.

2 John H. Wigmore, WIGMORE ON EVIDENCE, Section 277 (Chadbourn rev.1979) (emphasis in original). While Mr. Wigmore recognizes that certain circumstances in which the spoliator is not a party but a third person or agent of a party may give rise to the spoliation doctrine, he cautions that in those situations

> the act must be brought home to the party's connivance or sanction, express or implied, in order to use it as indicating any consciousness on his part of a weak cause. In thus connecting it with the party, it is to be noted, on the one hand, that no more [sic] technical theory of agency will suffice to charge him; for it is not a question of legal liability, but of actual moral connivance. On the other hand, no mere technical deficiencies of proof should be allowed to exonerate him; due regard to the common probabilities of experience should be paid.

*Id.* at Section 280.

In *Brissette v. Milner Chevrolet Co.*, this court considered the application of the spoliation doctrine to facts very similar to the those before us here. In *Brissette*, the plaintiff's left front tire collapsed causing his automobile to skid and spin across the highway until it eventually landed in a ditch. As a result of the accident, plaintiff suffered various injuries requiring hospitalization. Plaintiff filed a petition against manufacturers of the automobile and the tire on theories of negligence and breach of warranty. *Brissette*, 479 S.W.2d at 178. Plaintiff's answers to interrogatories revealed that his father, a garage and service station owner and an employee, and plaintiff had examined the tire two weeks after the accident. *Id.* Plaintiff's deposition revealed that sometime after these

examinations he gave the allegedly defective tire to his insurance company in connection with his claim for property damage. *Id.* at 178. Prior to trial, defendants filed a motion to produce the tire with which plaintiff was unable to comply. *Id.*

In his opening remarks, plaintiff stated he was going to present expert testimony to show that a defect existed in the tire. Defendants in *Brissette* objected to such testimony arguing that plaintiff had failed to make the tire available for inspection by the defendants, and therefore, was precluded from putting forth any evidence regarding such examinations. *Id.* at 179. In an offer of proof before the judge, plaintiff explained that since delivering the tire to his insurance company two or three months after the accident, he had not been in possession of the tire, that he wrote to the company trying to locate the tire but his letter was never answered, and that he had not intentionally destroyed such evidence. *Id.* at 179. After plaintiff's offer of proof, the defendants moved for a directed verdict. The trial court granted defendants motion because, *inter alia*, without the tire, plaintiff could not make his case through the expert testimony. *Id.*

On appeal, this court considered whether the spoliation doctrine applied thereby precluding plaintiff's expert testimony regarding the tire. In urging the application of the spoliation doctrine, the defendants argued that the proffered testimony was inadmissible because plaintiff had "failed to explain satisfactorily or account for his inability to produce the tire or because he failed to preserve the evidence and therefore should be held to admit the allegations of defendants that there was no defect in the tire." *Id.* at 182.

In the opinion authored by Judge Simeone, this court declined to apply the spoliation doctrine, relying on the fact that the record demonstrated that once plaintiff turned the tire over to his insurance company, he no longer had possession of the tire. We explained that evidence allegedly spoliated must at least "be in the party's power to produce." *Id.* "Where the evidence is not in the plaintiff's possession it is not within the

rule that evidence must be produced or considered against his interest." *Id.* While plaintiff's attempt to locate the tire by way of letter to the insurance company was "feeble," and that "a greater effort should have been made and perhaps it is still not too late to do so," we found that the record presented "no indication whatsoever that the plaintiff intentionally and in bad faith refused to produce or destroyed the subject matter." *Id.* at 183. We cautioned, however, that the holding did not mean to "imply that a party is under no duty to preserve the object for discovery and evidentiary purposes." *Id.* Instead, we only held that finding no bad faith on the part of plaintiff and "under the circumstances of this case, the plaintiff should not be deprived of the opportunity of a trial when, at this time, the tire is not available." *Id.*

■ Guided by these standards governing the spoliation doctrine, we find that Defendants were not entitled to summary judgment as a matter of law. Defendants failed to show that either Appellant, the Schneiders, or Republic intentionally destroyed or discarded the flue components. Neither did Defendants present any evidence that a party in bad faith directed, encouraged, or in any other way took part in destroying evidence. Instead, they alleged only that Republic's retained expert, Mr. Richardson, discarded such evidence. In the deposition offered by Defendants, Mr. Richardson stated that the disposal of the evidence was unintentional and that he was not directed to dispose of the evidence. Without any evidence in the record manifesting bad faith or intent to defraud on the part of a party, application of the spoliation doctrine is inapplicable. We note, however, that our holding does not preclude Defendants from offering evidence indicating bad faith on remand if such evidence exists. If, however, Defendants succeed in proving spoliation and become entitled to an adverse inference, Appellant must be allowed to pursue her claim and attempt to overcome the adverse inference as she may determine remaining evidence allows.

Accordingly, the trial court's decision with regard to summary judgment is reversed and

remanded for proceedings consistent with this opinion.

■ In her second point on appeal, Appellant asserts that the court erred in dismissing, as time barred by the statute of limitations, Counts IV and VII against Defendants for breach of implied warranty of fitness for a particular purpose. She argues dismissal was improper because the warranty extended to future performance. Defendants do not contest that the sale of the furnace falls under this warranty. Instead, they argue dismissal was proper because Appellant's claims were time barred by the statute of limitations. We agree.

■ Section 400.2–315 provides that in a contract for the sale of goods "where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," there is an implied warranty that the goods shall be fit for such purpose. Under Section 400.2–725, "an action for breach of warranty must be commenced within four years of the accrual of the cause of action." *Black Leaf Products Co. v. Chemsico, Inc.*, 678 S.W.2d 827, 830 (Mo.App. E.D.1984). This fouryear period starts to run "upon delivery of the goods unless the goods were sold with a warranty for future performance; in such case, the statute of limitations runs from the date on which the defect was or should have been discovered." *Id.* "To constitute a warranty for future performance, the terms of the warranty must unambiguously indicate that the manufacturer is warranting the future performance of the goods for a specified period of time." *Wienberg v. Independence Lincoln–Mercury, Inc.* 948 S.W.2d 685, 689 (Mo.App. W.D.1997); *see Wilbur Waggoner Equipment and Excavating Co. v. Clark Equipment Co.*, 668 S.W.2d 601, 602 (Mo. App. E.D.1984).

Here, Appellant has failed to direct us to any such express or explicit agreement extending this warranty to future performance. The Schneiders took possession of their house in February, 1985. They first brought a claim against Guilliams alleging breach of the implied warranty of fitness for a particu-

lar purpose on July 19, 1990, five years and five months after they took possession of their house. Absent any language extending the implied warranty past the statutory limitation, the warranty expired in February, 1989. Point denied.

Judgment of the trial court is reversed in part and affirmed in part and remanded for proceedings consistent with this opinion.

SIMON and HOFF, JJ., concur.