Jeremy GASTON, Respondent,

v.

STEADLEY COMPANY and Hartford Insurance Company, Appellants.

No. 24322.

Missouri Court of Appeals,
Southern District,
Division Two.

March 6, 2002.

Ronald G. Sparlin, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, for Appellants.

Charles Buchanan, Buchanan & Williams, P.C., Joplin, for Respondent.

JOHN E. PARRISH, Judge.

Steadley Co. (employer) and Hartford Insurance Co. (insurer) appeal a workers' compensation award from the Labor & Industrial Relations Commission (the commission) to Jeremy Gaston (claimant). This court affirms.

An award by the commission will be reversed on appeal only if there is no substantial evidence to support the award or the award is clearly contrary to the overwhelming weight of the evidence. *Wilmeth v. TMI, Inc.,* 26 S.W.3d 476, 478 (Mo.App.2000). An appellate court views the evidence and all reasonable inferences therefrom in the light most favorable to the commission's award. *Id.* Deference is given to the commission on issues of witness credibility, evidentiary conflicts, weight of evidence and factual inferences. *Lorenz v. Sweetheart Cup Co., Inc.,* 60 S.W.3d 677, 679 (Mo.App.2001).

On December 7, 1995, claimant was on his way to work at employer's plant in Carthage, Missouri. The plant is located on River Street. It encompasses a city block. Employer's facilities include a factory, a warehouse, a storage area, and three parking areas. Two of the parking areas, a gravel parking lot and a parking shed, are separated from employer's other facilities by River Street, a public street. Employer maintains the parking areas and according to Rick Bates, employer's plant manager, employees are expected to park on the areas employer maintains for that purpose. Claimant parked on the gravel lot when he arrived at the plant. He was struck by a pickup truck as he crossed River Street on his way from the parking lot to the factory.

Claimant was seriously injured in the accident. He was flown by helicopter to St. John's Regional Medical Center in Joplin where he was diagnosed with a ruptured spleen, depressed skull fracture, brain stem injury, pulmonary aspiration, facial lacerations, bilateral pneumothorax, pneumonia, and paralytic ileus. Surgeries were performed to repair the skull fracture, a brain laceration, a dural tear, the brain stem injury, the facial lacerations, the pulmonary aspiration, and the fractured spleen. Claimant required a feeding tube. His respiratory problems required

use of a ventilator, insertion of chest tubes, and additional surgeries.

Claimant was unconscious. He was placed in intensive care at St. John's. He was transferred from St. John's to Missouri Rehabilitation Center in Mount Vernon, Missouri, on December 20, 1995. At the time of the transfer, claimant remained in a coma. He required oxygen and feeding tubes. He gradually improved cognitively and the oxygen and feeding tubes were removed. He underwent coma stimulation, speech therapy, occupational therapy, and physical therapy.

Claimant was evaluated neurologically by Dr. William H. Havins. The evaluation disclosed moderate cerebral dysfunction, severe delay in processing sensory and perceptual information, severe impairment performing manual dexterity tasks and tasks that required a combination of visual scanning, sequencing and paper and pencil skills, and moderate impairment in his capacity for new learning. He was evaluated as functioning at a "borderline" level.

Claimant was discharged May 10, 1996. At the time of his discharge, he had "significantly improved his cognitive function," but had poor memory and organizational skills, continued to have trouble with "vision acuity" attributed to "some cranial nerve injury," and was unable to extend his left knee to a neutral position due to heterotopic ossification.[1] Claimant's discharge summary stated that he needed supervision at all times and should not drive or operate machinery. Continued physical therapy, occupational therapy, and speech therapy were recommended.

Following claimant's discharge, he had knee surgery to remove the heterotopic ossification. He received radiation treatments to prevent its recurrence. He continued treatment at Missouri Rehabilitation Center for a right side tremor and to strengthen his left knee. Claimant also received occupational therapy and cognitive rehabilitation at St. John's.

In 1997 claimant participated in transitional living, an outpatient service provided by Missouri Rehabilitation Center. The program focused on independent living skills. Goals for claimant were independent living with support system and determination of vocational objectives. His progress was impeded by limited "higher level cognitive functions," "serious deficit in attention," psychosocial issues, impulsivity and temper, and right arm tremor.

In late 1998, Dr. Charles Teo performed surgery to suppress claimant's right side tremor. Dr. Teo diagnosed the cause of claimant's tremor as "due to diffuse deep nuclear problem damage in the left hemisphere, including the left frontal lobe, left basilar ganglia and left cerebellum." He classified claimant's tremor as "extremely severe." A brain stimulator was placed in claimant's left thalamus. A device was placed in his chest wall to turn the stimulator on and off. The procedure resulted in less than 25% suppression of the tremor.

■ Employer's and insurer's first point on appeal asserts the commission erred in awarding claimant benefits because his injury was unrelated to his employment. They argue the commission erroneously found claimant's injury was caused by an accident arising out of and in the course of his employment. Employer and insurer

---

1. According to Dr. Terry Winkler, a specialist in the area of physical training and rehabilitation, heterotopic ossification results from the body manufacturing bone in the tendons, ligaments, and other soft tissue around a joint. Dr. Winkler stated the condition occurs in 30 to 35% of traumatic brain injury cases. Heterotopic ossification is a result of either a faulty message from the brain or trauma to the area affected.

base their argument on the fact that claimant was injured in a public street neither owned, maintained, nor controlled by employer; that the injury occurred prior to claimant reporting for work. They argue that the injury arose from a hazard or risk to which claimant would have been equally exposed outside of and unrelated to his employment.

The commission addressed the issues presented in Point I in considerable detail in its Final Award Allowing Compensation. This court agrees with the commission's conclusions and the rationale it followed in determining those issues. The language the commission used in determining those issues is, in large part, adopted and hereafter included in this opinion in addressing Point I. It appears without quotation reference or other acknowledgment.

In *Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534 (Mo. banc 1996), the court set forth the two-prong test for compensability in an extended premises case: (a) the injury-producing accident occurs on premises which are owned or controlled by the employer, or on premises which are not actually owned or controlled by the employer but which have been so appropriated by the employer or so situate, designed and used by the employer and his employees incidental to their work as to make them, for all practicable intents and purposes, a part and parcel of the employer's premises and operation; and (b) if that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workmen to get to and depart from their places of labor and is being used for such purpose at the time of the injury. *Id.* at 535–36.

In this instance, claimant parked in an authorized parking area and crossed a street that was the customary or usual route to reach employer's place of business. The parking lot and street were so situated and used by employer and its employees as to be a part and parcel of employer's premises. The extended premises doctrine applies. Claimant's injuries occurred within the course and scope of employment.

Nearly identical to the facts of this case is *Frye v. Viacom, Inc.*, 927 S.W.2d 545 (Mo.App.1996). There, the employer offered parking at a discounted rate at a publicly owned parking garage approximately two blocks from the employer's place of business in downtown St. Louis. The employee was injured on a public sidewalk grate while walking from the parking garage to the place of employment. As in this case, the employee had not yet commenced work. In finding the injury covered by the Workers' Compensation Act, the court said:

Thus, we conclude that the garage was so situate, designed, and used by employer and its employees incidental to their work as to make it, for all practical intents and purposes, a part and parcel of employer's premises and operation.

The facts also fulfill the second prong of the test, which requires the injury to occur within the customary route taken by the employees in going to and coming from work. The parties stipulated that the location of the accident was within "the normal walk to work from the garage for [claimant], a[s] it is for many of [employer's] employees."

As in *Cox*, employer's liability was foreseeable, deriving from its active intervention to ensure guaranteed parking for its employees in a garage located near employer's offices. . . . Thus, we conclude that the exception to the going to and coming from work rule applies; the injury arose out of and in the course of employment.

*Id.* at 550–51.

*Frye* was decided on facts that arose before the enactment of the 1993 amend-

ment to § 287.020, RSMo 1986. That section, which defines when an injury arises out of and in the course of employment, now provides that the injury must "not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life." § 287.020.3(2)(d), RSMo Cum.Supp.1993. The associate administrative law judge who heard this case initially found that in crossing a public thoroughfare, claimant was not exposed to a risk or hazard unique to his employment.[2]

After the Division of Worker's Compensation had issued its award in this case, the supreme court decided an extended premise case that removed the ambiguity regarding whether the extended premises doctrine discussed in *Frye* applies to cases that arose subsequent to the enactment of the 1993 amendment to § 287.020, RSMo 1986. In *Wells v. Brown*, 33 S.W.3d 190 (Mo. banc 2000), the employee slipped and fell on an ice-covered parking lot adjacent to the building where her employer rented office space. Her employer did not own or control the parking lot where the claimant in *Wells* fell. The employer argued that since a winter storm had affected the entire metropolitan area, the ice on the parking lot was a condition to which the claimant was "equally exposed" in her "normal non-employment life." *Id.* at 193. The court began by restating the extended premises doctrine as set forth in *Cox* and *Frye*. The court then soundly rejected any contention that the claimant was "equally exposed" to the ice hazard outside the context of her employment. The court noted that the claimant would not have been going to work across the parking lot

if it were not for her employment. Therefore, her injury did not come from a hazard unrelated to her employment, under § 287.020.3(2)(d).

The ruling in *Wells* is consistent with recent supreme court decisions in *Drewes v. Trans World Airlines*, 984 S.W.2d 512 (Mo. banc 1999), and *Kasl v. Bristol Care, Inc.*, 984 S.W.2d 852 (Mo. banc 1999). In each of these cases, the supreme court considered and rejected the defense that the injury in question occurred as a result of a hazard or risk to which the employee was equally exposed outside of employment. In *Kasl*, the claimant, unaware that her foot had fallen asleep, fell after she rose from her chair to dispense medication to a resident in a care facility. In *Drewes*, the claimant fell as she was carrying her lunch during a scheduled, unpaid lunch break.

As in *Cox* and *Frye*, the claimant in this instance was on a direct and normal route used by employees to reach work from a parking lot authorized by the employer for the employees' use. If the claimant had not been going to work, he would not have been crossing the street where the accident occurred. The claimant's injuries occurred within the course and scope of employment and are compensable. Point I is denied.

■ Point II contends the commission erred in finding claimant was permanently and totally disabled. Employer and insurer argue that the opinions of physicians who testified on their behalf that claimant was less than totally disabled should have been accepted by the commission rather than testimony of other physicians who asserted total disability.

2. The commission reversed the administrative law judge's finding that claimant's injury did

not occur as a result of his employment.

"When the right to compensation depends on the acceptance of one of two competing medical theories, the issue is one of fact and the Commission's finding will not be disturbed unless the Commission acted unreasonably in accepting testimony that was not substantial or decided the issue contrary to the overwhelming weight of the evidence." *Keener v. Wilcox Elec., Inc.*, 884 S.W.2d 744, 746 (Mo.App. 1994). The commission did not act unreasonably in accepting the medical testimony in this case that supported a medical theory other than that espoused by employer's and insurer's expert witnesses. Giving deference to the commission's assessment of the credibility of witnesses, this court concludes the commission did not decide the issue of claimant's disability contrary to the overwhelming weight of the evidence.

The commission's order awarding compensation on the basis of total disability is supported by competent and substantial evidence on the whole record. Further opinion with respect to Point II would have no precedential value. No error of law appears. Point II is denied pursuant to Rule 84.16(b)(4) and (5). The award is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.