**James DeGRAFFENREID, Respondent,**

v.

**R.L. HANNAH TRUCKING COMPANY, Appellant.**

No. WD 60221.

Missouri Court of Appeals, Western District.

July 30, 2002.

James H. Bell, Kansas City, MO, for respondent.

Before ULRICH, P.J., BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

R.L. Hannah Trucking Co. appeals from an award of workers' compensation benefits to the estate of James DeGraffenreid. On appeal, Hannah Trucking alleges that the Labor and Industrial Relations Commission erred in awarding benefits to the estate because (1) there was not sufficient competent evidence that Mr. DeGraffenreid's injuries arose out of his employment; (2) there was not sufficient competent evidence of fraud, deceit, or a desire to suppress the truth to support application of the spoliation doctrine for failure to produce evidence; and (3) the spoliation doctrine was wrongfully applied to prove the estate's claim. This court finds that there was sufficient competent evidence to support the application of the spoliation doctrine for Hannah Trucking's failure to disclose telephone logs. The Commission misapplied the spoliation doctrine, however, when it found that the adverse inference rule established the estate's claim for worker's compensation benefits. Despite the Commission's misapplication of the spoliation doctrine, its findings unrelated to the spoliation doctrine compel the legal conclusion that Mr. DeGraffenreid's estate is entitled to the award. Finally, the Commission's finding that Mr. DeGraffenreid's injury arose out of his employment is supported by competent and substantial evidence and is not against the overwhelming weight of the evidence. Therefore, the award of worker's compensation benefits is affirmed.

## Factual and Procedural Background

The facts, viewed in the light most favorable to the Commission's award, are

Dana Cutler, Kansas City, MO, for appellant.

that Mr. DeGraffenreid was employed by Hannah Trucking as an over-the-road truck driver. In March of 1994, Mr. De-Graffenreid made a trip to San Antonio, Texas, for Hannah Trucking. In San Antonio, Mr. DeGraffenreid suffered a stroke while in the cab of his parked truck. At the time of his stroke, Mr. DeGraffenreid was fifty-one years old. After his stroke, Mr. DeGraffenreid was paralyzed and required constant care and observation.

On November 7, 1994, Mr. DeGraffenreid filed a claim for workers' compensation benefits. In his claim, Mr. DeGraffenreid alleged that his stroke was caused by the stress he suffered as a result of Hannah Trucking's "demanding over-the-road truck-driving schedule." Specifically, Mr. DeGraffenreid sought to establish that he was driving more hours than Department of Transportation regulations permitted, and he was keeping two sets of driver's logs to conceal his violation of the federal regulations. In an attempt to prove his allegation that he was violating the regulations, Mr. DeGraffenreid requested that Hannah Trucking produce various documents which would indicate the number of hours that he was driving and resting, and the number of miles he was driving. These documents included driver's logs, telephone logs, payroll records, and freight bills. Hannah Trucking produced many documents, but it did not produce complete telephone logs for the period from March 23, 1992, through February 7, 1994.

On January 17, 1998, Mr. DeGraffenreid died as a result of vascular disease. Thereafter, Mr. DeGraffenreid's estate was substituted as the claimant. On June 6, 2000, an Administrative Law Judge (ALJ) heard evidence on the estate's claim. At the hearing, the estate presented evidence that Mr. DeGraffenreid drove more hours than federal regulations allowed and kept two sets of driver's logs. An expert witness for the estate testified that the stress of driving more hours than legally permitted and the guilt associated with keeping two sets of driver's logs were a substantial factor in Mr. DeGraffenreid's stroke.[1] In defense, Hannah Trucking presented evidence that Mr. DeGraffenreid had several of the high-risk factors for a stroke, including age, gender, genetic predisposition, hypertension, cigarette smoking, alcohol abuse, infection, high cholesterol, and arterial disease. Hannah Trucking's experts opined that Mr. De-Graffenreid's stroke was caused by these factors and did not arise out of his job as a truck driver.

After hearing the evidence, the ALJ found that "[e]ven if [Mr. DeGraffenreid's estate] had clearly proven that he was driving in excess of the allowed hours and mileage, lacked the requisite sleep and suffered from guilt, this Court is not convinced that such stress was the substantial factor in [Mr. DeGraffenreid's] stroke." The ALJ concluded that "it is far more likely that the combination of his pre-existing risk factors were [sic] the substantial factors in [Mr. DeGraffenreid's] stroke." Accordingly, the ALJ found in favor of Hannah Trucking and denied benefits.

The estate appealed to the Commission. The Commission reversed the ALJ's decision, with one commissioner dissenting. In awarding benefits, the Commission found that the estate's expert, Dr. Gerald

---

1. Section 287.020.3, RSMo 2000, defines the term "injury" to be "an injury which has arisen out of and in the course of employment," and one of the requirements for an injury "to arise out of and in the course of employment," is that it must be "reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury." Section 287.020.3(1)–(2)(a).

B. Lee, was credible. Dr. Lee testified that the medical evidence did not support a finding that Mr. DeGraffenreid had high cholesterol and there was no medical evidence of long-standing hypertension. Dr. Lee acknowledged Mr. DeGraffenreid's preexisting risk factors of cigarette smoking, age, gender, and preexisting atherosclerosis. Nevertheless, Dr. Lee found that the stress from Mr. DeGraffenreid's employment was a substantial factor in causing his stroke. Dr. Lee testified that the stress of driving too far, too long, and under too much pressure was a substantial factor in the increase in Mr. DeGraffenreid's vascular blood pressure and his pulse, which caused the stroke.

In coming to this conclusion, Dr. Lee reviewed the available driver's logs, telephone logs, and freight bills. The unavailability of all of the requested information was recognized by the Commission. The Commission found that:

> Dr. Lee's assessment of [Mr. DeGraffenreid's] driving history in the period preceding his stroke was hindered, however, because of missing portions of the documentation.

> Based upon the incomplete set of documents that Dr. Lee was able to review, he credibly testified that the number of hours and distance that claimant was driving, the insufficient number of hours that he slept and the stresses of maintaining two log books to cover-up that information, created the stress that was the substantial factor in causing [Mr. DeGraffenreid's] stroke on March 22, 1994.

In its ruling, the Commission discussed in detail Hannah Trucking's failure to provide the records Mr. DeGraffenreid's counsel requested, primarily the complete telephone logs. The Commission noted that Hannah Trucking's corporate representative, Sharon Green, admitted that Hannah

Trucking had possession of the requested documents. In addition, the Commission stated that Ms. Green also testified that she had not looked for some of the telephone logs. The Commission believed that "Ms. Green offered no satisfactory explanation as to what employer had done with the complete telephone log" and, in fact, was evasive. Thus, it found her testimony not credible.

Based upon Ms. Green's evasive testimony, the Commission found that Hannah Trucking was guilty of spoliating the telephone logs, and stated that it was applying the adverse inference rule. The Commission stated that it would apply the adverse inference rule to "presume that the evidence employer destroyed or concealed would have established the justness of claimant's demand for workers' compensation benefits." The Commission sanctioned Hannah Trucking by finding "that employer admits the truth of claimant's allegation that claimant's truck driving was a substantial factor in causing claimant's March 22, 1994 stroke." The Commission then awarded Mr. DeGraffenreid's estate permanent total disability benefits, medical expenses and nursing services. Hannah Trucking filed this appeal to challenge the Commission's award.

### Standard of Review

■ On an appeal from the Commission, this court will not disturb the Commission's award unless the Commission acted without or beyond its power, the award was procured by fraud, the facts found do not support the award, or the award is not supported by sufficient competent evidence in the record. Section 287.495.1, RSMo 2000. Here, the estate has the burden of proving all elements of its claim to a reasonable probability. *Ransburg v. Great Plains Drilling*, 22 S.W.3d 726, 730 (Mo.App.2000). Hannah Trucking asserts

that the estate did not meet that burden, and that the award was not supported by sufficient competent and substantial evidence. "[T]o determine whether the Commission could have reasonably made its findings and award upon consideration of all the evidence before it," this court uses a two-step process:

In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App.1995). In reviewing the Commission's award, this court cannot substitute its judgment regarding questions of fact for that of the Commission. *Id.*

■■■ This court, however, is not bound by those findings of the Commission which are clearly the interpretation of law. *Id.* "An appellate court may review questions of law and make holdings as if it were the court of origin." *Thatcher v. Trans World Airlines,* 69 S.W.3d 533, 541 (Mo.App. 2002). The determination whether there was sufficient evidence to support application of the spoliation doctrine and review of whether the spoliation doctrine was

properly applied are issues of law, which this court will review de novo.

### Review of Merits Preferred

■■■ Before addressing Hannah Trucking's points on appeal, we consider the estate's claim that this court should disregard Hannah Trucking's brief for failure to comply with Rule 84.04(h) and (i). The estate first asserts that Hannah Trucking discussed the Commission's findings of fact and conclusions of law in the argument portion of its brief but failed to attach a copy of the award as an appendix. The estate further argues that Hannah Trucking's brief should not be considered because it did not make specific page references to the legal file or the transcript in the argument portion of its brief. "Where possible, however, [this court's] preference is to dispose of a case on the merits rather than to dismiss an appeal for deficiencies in the brief." *Podlesak v. Wesley,* 849 S.W.2d 728, 731 (Mo.App.1993). Here, Hannah Trucking made reference to the legal file or transcript in its statement of facts, and this court easily obtained the Commission's award from the legal file. Therefore, this court will exercise its discretion and review Hannah Trucking's claims, despite the fact that its brief did not strictly comply with Rule 84.04(h) and (i).

### Sufficient Evidence Supports the Application of the Spoliation Doctrine

Because Hannah Trucking's claims concerning the spoliation doctrine have the potential to be dispositive, this court will address Hannah Trucking's second and third points before its first point. In its second point on appeal, Hannah Trucking contends that there was not sufficient competent evidence to support the application of the spoliation doctrine. Specifically,

Hannah Trucking claims that there was no evidence that its failure to produce the telephone records in question was the result of fraud, deceit, or a desire to suppress the truth.

■■■■ Missouri courts have recognized the spoliation doctrine since *Pomeroy v. Benton,* 77 Mo. 64, 86–87 (1882). *Moore v. Gen. Motors Corp.,* 558 S.W.2d 720, 733 (Mo.App.1977). " 'Spoliation' is the destruction or significant alteration of evidence." *Schneider v. G. Guilliams, Inc.,* 976 S.W.2d 522, 526 (Mo.App.1998) (quoting *Baugher v. Gates Rubber Co.,* 863 S.W.2d 905, 907 (Mo.App.1993)). A party who intentionally spoliates evidence is subject to an adverse evidentiary inference. *Id.* "[T]he destruction of written evidence without satisfactory explanation gives rise to an inference unfavorable to the spoliator." *Garrett v. Terminal R. Ass'n of St. Louis,* 259 S.W.2d 807, 812 (Mo.1953). "Similarly, where one party has obtained possession of physical evidence which [the party] fails to produce or account for at the trial, an inference is warranted against that party." *State ex rel. St. Louis County Transit Co. v. Walsh,* 327 S.W.2d 713, 717 (Mo.App.1959). "[W]here one conceals or suppresses evidence such action warrants an unfavorable inference." *Id.* at 717–18.

■■■■ While Missouri spoliation cases have usually dealt with the destruction of evidence, the principles of law in the cases apply equally to application of the spoliation doctrine because a party has concealed or suppressed evidence. The standard for application of the spoliation doctrine requires that "there is evidence of an intentional destruction of the evidence indicating fraud and a desire to suppress the truth." *Moore,* 558 S.W.2d at 733. The requirement for evidence indicating fraud and bad faith, was discussed further

in *Morris v. J.C. Penney Life Ins. Co.,* 895 S.W.2d 73, 77 (Mo.App.1995):

> When spoliation is urged as a rule of evidence which gives rise to an adverse inference, it is necessary that there be evidence showing intentional destruction of the item, and also such destruction must occur under circumstances which give rise to an inference of fraud and a desire to suppress the truth.

"Since the doctrine of spoliation is a 'harsh rule of evidence, prior to applying it in any given case it should be the burden of the party seeking its benefit to make a prima facie showing that the opponent destroyed the missing [evidence] under circumstances manifesting fraud, deceit or bad faith.' " *Schneider,* 976 S.W.2d at 527 (quoting *Moore,* 558 S.W.2d at 736). In some circumstances, "destruction of evidence without a satisfactory explanation gives rise to an inference unfavorable to the spoliator." *Brown v. Hamid,* 856 S.W.2d 51, 57 (Mo. banc 1993). Simple negligence, however, is not sufficient to apply the adverse inference rule. *Brissette v. Milner Chevrolet Co.,* 479 S.W.2d 176, 182 (Mo.App.1972).

■■■■ Here, there is substantial competent evidence creating the inference of deceit and bad faith in Hannah Trucking's failure to provide the telephone logs. Prior to the hearing, Mr. DeGraffenreid and later his estate made numerous requests to obtain a complete set of telephone logs for the two years prior to his stroke. Hannah Trucking never produced complete telephone logs from March 23, 1992, through March 22, 1994. Hannah Trucking did produce some telephone logs, but those logs did not include the dates of February 12–15, 19–20, 22, 24–28, 1994; and March 1–7, 12–13, 19–20, 1994. Those two months were significant in determining whether Mr. DeGraffenreid was driving more than federal regulations allowed

because those are the two months that preceded Mr. DeGraffenreid's stoke.

Ms. Green acted as Hannah Trucking's corporate representative, and she was the one who kept the telephone logs. At her deposition, she testified that the documents she provided, in response to the estate's request, were all that she had. During another part of the deposition, however, she admitted that Hannah Trucking possessed the documents that Mr. DeGraffenreid requested. She testified that the documents that Mr. DeGraffenreid requested were "all stored in a whole separate building. Because like I said, I'm not even—I don't even have to have them. I just don't throw them away, and they're stored in boxes and boxes and boxes, so I'll need a while."

At the hearing, Ms. Green testified that dates in February and March 1994 were missing from the telephone logs that Hannah Trucking provided to the estate. With regard to the missing portions of the telephone logs, she testified:

Q. Are you saying that you threw away the telephone log that you got these records from that you've just told us about from February 7th to March 18th?

A. I didn't say I threw them away.

Q. Do you have them?

A. I don't know.

Q. Have you been able to find it?

A. I haven't looked.

She then stated that she had already produced everything that she had. But she could not explain why she had provided portions of a telephone log on two separate occasions, but could not provide the telephone records for the missing dates, which were in the same telephone log.

The significance of the missing records was emphasized by the estate's cross-examination of Ms. Green. The cross-examination of Ms. Green revealed that the information in one of Mr. DeGraffenreid's log books about his driving times and locations was inconsistent with Hannah Truckings' telephone logs, weigh office documents, and freight bills. Mr. DeGraffenreid's log indicated on many occasions that he was resting when he was really driving or loading his truck. Ms. Green testified that she had the responsibility to review the drivers' logs, freight bills, telephone logs, and toll road and gas receipts to make sure that Hannah Trucker's drivers were not violating the federal safety regulations. Ms. Green admitted that she was aware, on occasion, that Mr. DeGraffenreid was driving in violation of federal regulations when he turned his logs in, but that she did not take any action. Despite being questioned about numerous entries in Mr. DeGraffenreid's log book that were inconsistent with Hannah Trucking's records, and in contrast to her admission that she knew of his violations, Ms. Green testified that she did not believe that Mr. DeGraffenreid was keeping two log books or that he was driving in violation of the federal regulations.[2]

Ms. Green agreed that a complete set of records would allow for a determination of how many hours Mr. DeGraffenreid was driving. She testified:

Q. If we had all of [the freight bills] and we had all of these driver's logs and we had a complete telephone log that you kept, we could tell exactly how

2. Subsequent direct examination of Ms. Green by Hannah Trucking's counsel confirmed that there were two sets of driving logs prepared by Mr. DeGraffenreid and that Mr. DeGraffenreid was driving in excess of the federal requirements. The Commission also found that the estate's witness, Kenneth Thompson, credibly testified that "employer should have known that [Mr. DeGraffenreid] was in violation of the DOT regulations regarding the number of hours he was permitted to drive."

many hours in eight days James De-Graffenreid was driving for any period the two years prior to his stoke, fair statement?

A. Fair statement.

Q. But we don't have anywhere close to all of those documents, do we?

A. No.

 In its findings of fact regarding the missing telephone logs, the Commission found:

> Ms. Green offered no satisfactory explanation as to what employer had done with the complete telephone log that [the estate] had requested. Ms. Green's testimony regarding the missing portions of the telephone log was evasive. For that reason, we find her testimony regarding the missing documents to be not credible.... Employer was given a full opportunity to either produce the missing portions of the telephone log or to explain why it failed to produce those documents. Employer did not produce the documents and through its designated representative failed to satisfactorily explain why it did not produce the missing portions of the telephone log. In light of Ms. Green's evasive testimony, we decline to speculate that employer was simply unable to find the missing portions of the telephone log.

The Commission found that Ms. Green's testimony regarding the missing portions of the telephone logs was evasive and not credible. This court defers to the Commission's determination of witness credibility. *Gaston v. Steadley Co.*, 69 S.W.3d 158, 159 (Mo.App.2002). The Commission "is free to believe all, part, or none of the evidence presented" at the hearing. *Perry v. Tri–State Motor Transit Co.*, 41 S.W.3d 919, 923 (Mo.App.2001). The Commission's finding is the equivalent of finding that Hannah Trucking was deceitful or acted in bad faith. Contrary to Hannah

Trucking's claim, the finding is supported by competent evidence in the record that Hannah Trucking was deceitful and acted in bad faith when it did not provide the telephone logs, and that Hannah Trucking spoliated the telephone logs.

Hannah Trucking challenges these findings as being against the weight of the evidence. Hannah Trucking is correct that there was additional testimony by Ms. Green that the records do not exist, and that she looked for the records and produced all telephone logs that were available. But the Commission found that this testimony was not credible, and this court defers to the credibility findings of the Commission. *Id.* In light of the credibility determinations and a review of all the evidence, the Commission's decision was not against the greater weight of the evidence. Therefore, Hannah Trucking's second point is denied.

### Commission Misapplied the Spoliation Doctrine

Since this court finds that there was sufficient evidence to support application of the spoliation doctrine, it next considers Hannah Trucking's contention in its third point that the Commission misapplied the spoliation doctrine. Hannah Trucking challenges the Commission's application of the spoliation doctrine to establish "the justness of [the estate's] demand for workers' compensation benefits." Hannah Trucking contends that the spoliator is deemed to have admitted only that the documents in question, if produced, would state what the opposing party claims they state, not the ultimate conclusion of the estate's claim. Hannah Trucking argues that the telephone logs would show only that Mr. DeGraffenreid made a telephone call from a certain location on a particular date.

When the Commission imposed the sanction that Hannah Trucking claims is a misapplication of law, the Commission quoted the Supreme Court's holding in *Garrett*, 259 S.W.2d at 812, that "the law, in consequence of the fraud practiced, in consequence of the spoliation, will presume that the evidence destroyed will establish the other party's demand to be just." The Commission also relied upon *Moyers v. Ford Motor Co.*, 941 F.Supp. 883 (E.D.Mo. 1996), to determine the proper sanction for Hannah Trucking's failure to produce the telephone logs. Following the analysis and law in *Moyers*, the Commission considered Hannah Trucking's degree of fault, the degree of prejudice suffered by Mr. DeGraffenreid's estate, and whether there was a lesser sanction that would avoid substantial unfairness to the estate and would deter such conduct by others in the future.[3] *See id.* at 885. The Commission found that Hannah Trucking was "seriously at fault," Mr. DeGraffenreid's estate "suffered great prejudice," and the only way the Division of Workers' Compensation subpoenas will have any power or respect is to enforce the subpoena's language, "hereof fail not at your peril." The Commission then concluded:

> [W]e presume that the evidence employer destroyed or concealed would have established the justness of [the estate's] demand for workers' compensation benefits. The sanction in this case is to find

that employer admits the truth of [the estate's] allegation that [Mr. DeGraffenreid's] truck driving was a substantial factor in causing claimant's March 22, 1994 stroke. Accordingly, claimant is entitled to past benefits for permanent total disability, medical expenses and nursing services.

In reaching this conclusion, the Commission correctly quoted the standard of Missouri law when it utilized the language from *Garrett* that spoliation "will establish the other party's demand to be just," but it incorrectly interpreted the scope of the sanction the Supreme Court intended to authorize. The Commission's quote from *Garrett* came from the Missouri Supreme Court's discussion of the consequences of the spoliation of evidence:

> This court has several times given effect to the rule that where a party to a suit has been guilty of spoliation of documentary evidence, he is held thereby to admit the truth of the allegation of the opposite party, and this upon the ground that the law, in consequence of the fraud practice, in consequence of the spoliation will presume that the evidence destroyed will establish the other party's demand to be just.

259 S.W.2d at 812 (quoting *Gaugh v. Gaugh*, 11 S.W.2d 729, 748 (Mo. banc 1928)) (citations omitted). That the Su-

---

**3.** While the Commission followed the analysis of *Moyers* to determine what sanction to impose, it should not look to *Moyers* as authority for the sanctions available under the spoliation doctrine. In *Moyers*, the Eighth Circuit expressly stated that "[t]he imposition of such sanctions [for failure to preserve evidence] is not a matter of state law, ... but of a federal district court's inherent powers, and it is a matter 'peculiarly committed' to the discretion of the district court." 941 F.Supp. at 884–85. The sanctions available under federal law, as discussed in *Moyers*, include "a jury instruction on the 'spoliation inference,' an

inference which permits the jury to assume that the destroyed evidence would have been unfavorable to the position of the offending party; the exclusion of certain evidence of the offending party; or entry of judgment in favor of the prejudiced party." *Id.* at 885. While Missouri law permits the adverse inference that the destroyed evidence would have been unfavorable to the position of the offending party, the other sanctions are not permitted by Missouri law. *See Furlong v. Stokes*, 427 S.W.2d 513, 519 (Mo.1968); *Garrett*, 259 S.W.2d at 811–12.

preme Court did not intend that the sanction for spoliation be an entry of judgement for the other party, when it used the phrase "will establish the other party's demand to be just," is apparent from its application of the spoliation doctrine to the facts of *Garrett*.

In *Garrett*, a railroad brakeman was injured when he was knocked down by the "rough riding and jumping" of the rail car on which he was riding. 259 S.W.2d at 809. He claimed that his injury was caused by flat wheels, in connection with loose bolts on the rail car. After his injury he took possession of a "bad order card" upon which a railroad employee had noted problems with the rail car prior to the brakeman's injury. *Id.* at 808. At trial, the railroad proved that the injured brakeman destroyed the original bad order card and, instead, introduced into evidence a photostatic copy of the card which read, "Cotter Keys Missing in Pin Lifter Brackets in A End & Flat Wheels." *Id.* at 808, 811–12. The railroad claimed that "& Flat Wheels" was not on the original bad order card. *Id.* at 811–12.

The Supreme Court found that the trial court abused its discretion in admitting the photostatic copy in evidence because the only reasonable conclusion to be drawn from the evidence was that the brakeman intentionally destroyed the original bad order card. *Id.* at 812. The Court then applied the spoliation doctrine to hold that the brakeman "must, in law, admit to the truth of appellant's contention that the words, '& Flat Wheels,' were not on the original bad order card." In so holding, the Court did not rule the brakeman's entire claim against him. Instead, the Court stated, "We decline to rule whether the loose and missing bolts alone could be the proximate cause of [the brakeman's] injuries," and the Court remanded without direction. *Id.*

In a subsequent case, *Furlong v. Stokes*, 427 S.W.2d 513 (Mo.1968), the Supreme Court further demonstrated that the proper application of the adverse inference of the spoliation doctrine is not to prove the opposing party's case. *Id.* at 519. In *Furlong*, the plaintiff, Mr. Furlong, alleged that, while undergoing a knee operation, the "defendant negligently allowed and permitted a hot lamp to shine on the inside of [plaintiff's left knee], resulting in a burn about his left knee." *Id.* at 515. After Mr. Furlong's surgery, he was readmitted to the hospital for a skin graft to the lesion on his left knee. *Id.* at 519. The hospital record made upon Mr. Furlong's readmission described the lesion on his knee as a "'burn area, 3 LT Medial thigh (old).'" *Id.* The evidence showed that the operating surgeon, the defendant in the malpractice case, wrote over this with "'ulcer of left knee, medial aspect.'" *Id.* The Supreme Court held that "a change was made in the record, but it is not the same as destroying the record, or the same as alteration or erasure intended to obliterate completely that which was there before." *Id.* The Court went on to state, "Here, at most, defendant would be held to admit that the record originally said 'burn' rather than 'ulcer,' not that plaintiff Furlong actually had a burn." *Id.*

The scope of the adverse inference established by the Supreme Court in *Garrett* and *Furlong* was expressly articulated by the Eastern District of this court in *Schneider*, 976 S.W.2d at 526. The Eastern District stated:

> [T]he spoliation doctrine and the resulting adverse inference punishes the spoliators by holding them to admit that the destroyed evidence would have been unfavorable to their position. The adverse inference, however, does not prove the opposing party's case. Instead, the spoliator is left to determine whether any

remaining evidence exists to support his or her claim in the face of the inference. *Id.*

■ Considering the scope of the sanction available under the spoliation doctrine, the Commission erred when it used the spoliation doctrine to prove the estate's claim.[4] Hannah Trucking asserts that the proper application would be to infer only that "Mr. DeGraffenreid made a telephone call from a certain location on a particular date." This court disagrees. The concealment of the records by Hannah Trucking does not permit a determination of the specific calls Mr. DeGraffenreid made during the two months before he had his stroke, so it is impossible to infer that a telephone call was made from a certain location on a certain date. Instead, under the spoliation doctrine there is the adverse inference that Hannah Trucking concealed the evidence because it would be unfavorable to Hannah Trucking. So it is presumed that the evidence would have shown that Mr. DeGraffenreid drove in excess of the hours and miles allowed under federal regulations, and that he lacked the requisite sleep. The proper application of the spoliation doctrine, then, is for the Commission to find that the destroyed records would show that Mr. DeGraffenreid drove in excess of the hours and miles allowed under federal regulations, and that he lacked the requisite sleep. *See id.*

Normally, the misapplication of the spoliation doctrine would require reversal of the Commission's award. In this case, however, a remand would serve no purpose because the Commission found, exclusive of the spoliation doctrine, that the estate had proved all the elements of its claim. Even without the adverse inference from the spoliation doctrine, the Commission found credible the evidence that Mr. DeGraffenreid was driving in violation of federal regulations and keeping two sets of logs to conceal the violations. The Commission also relied upon testimony from one of Hannah Trucking's experts that "driving longer hours than the law permits, sleeping less hours than the law requires and keeping two sets of driver's logs to conceal that he is driving longer than permitted by law are stressful events for a truck driver." The Commission further found credible and persuasive the testimony of Dr. Lee that the number of hours and the distance Mr. DeGraffenreid was driving, the insufficient number of hours that he slept, and the maintenance of two log books to conceal that information created the stress that was a substantial factor in causing his stroke.

■ These factual findings compel the legal conclusion that Mr. DeGraffenreid's injury arose out of his employment and that his estate is entitled to an award of workers' compensation benefits. Because the Commission's factual findings support the award, irrespective of its misapplication of the spoliation doctrine, the misapplication of the spoliation doctrine does not require a reversal. Because the award is not reversed for the misapplication of the spoliation doctrine, we reach Hannah Trucking's claim that there was not competent and substantial evidence to support the award.

## Evidence Sufficient to Support the Award

In the last claim to be considered on appeal, Hannah Trucking asserts that there was not sufficient competent evi-

---

**4.** The sanctions available under the spoliation doctrine are more limited than sanctions available to enforce discovery under § 536.073, which provides that "[t]he agency may enforce discovery by the same methods, terms and conditions as provided by supreme court rule in civil actions in the circuit court."

dence to support the Commission's award. Specifically, Hannah Trucking contends that there was no competent evidence that Mr. DeGraffenreid's injury arose out of his employment, as required by the definition of "injury" in § 287.020.3. An injury arises out of and in the course of employment, under § 287.020.3(2) only when:

(a) It is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury; and

(b) It can be seen to have followed as a natural incident of the work; and

(c) It can fairly be traced to the employment as a proximate cause; and

(d) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life[.]

 In determining whether there is sufficient evidence in the record to meet the four requirements of § 287.020.3(2) for an injury to arise out of and in the course of employment, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's award. *Whiteman v. Del–Jen Const., Inc.,* 37 S.W.3d 823, 831 (Mo. App.2001). In reviewing the Commission's award, this court cannot substitute its judgment regarding questions of fact. *Davis,* 903 S.W.2d at 571. "Deference is given to the commission on issues of witness credibility, evidentiary conflicts, weight of evidence and factual inferences." *Gaston,* 69 S.W.3d at 159.

 In awarding compensation, the Commission found credible the documentary evidence, and testimony of Mr. Thompson, Ms. Green and Dr. Lee that Mr. DeGraffenreid was driving in violation of federal regulations and keeping two sets of logs to conceal the violations, and the stress of the excess driving and concealment of violations caused his stroke. The documentary evidence and testimony from Mr. Thompson and Ms. Green was sufficient proof that Mr. DeGraffenreid was driving a truck for Hannah Trucking in violation of federal regulations. Mr. Thompson, a consultant for motor carriers, testified to the number of hours truck drivers are permitted to drive under federal regulations. After reviewing the documentary evidence of Mr. DeGraffenreid's driver's logs, bills of lading, weight receipts, and telephone logs, Mr. Thompson concluded that Mr. DeGraffenreid was driving in excess of federal regulations and was keeping two sets of logs. Additionally, under the proper application of the spoliation doctrine, there is the adverse inference that the destroyed records would show that Mr. DeGraffenreid drove in excess of the hours and miles allowed under federal regulations, and that he lacked the requisite sleep.

The Commission found credible Mr. Thompson's testimony that Hannah Trucking should have known that Mr. DeGraffenreid was driving in excess of federal regulations regarding the number of hours he was permitted to drive. In fact, Ms. Green admitted that there were two sets of Mr. DeGraffenreid's logs offered into evidence by the estate, and that she knew that Mr. DeGraffenreid was driving in violation of the federal regulations, at least on some occasions. The Commission also relied upon the testimony of one of Hannah Trucking's experts, Dr. Charles Donohoe, that "driving longer hours than the law permits, sleeping less hours than the law requires and keeping two sets of driver's logs to conceal that he is driving longer than permitted by law are stress events for a truck driver."

The Commission also found that the number of hours and the distance Mr. DeGraffenreid was driving, the insufficient number of hours that he slept and the maintenance of two log books to conceal that information created the stress that was a substantial factor in causing his stroke. In reaching this conclusion, the Commission relied upon the testimony of Dr. Lee, which it found "credible and persuasive." Dr. Lee testified that, at the time Mr. DeGraffenreid had his stroke, he was not suffering from preexisting high cholesterol, and that there was no evidence that Mr. DeGraffenreid suffered from longstanding hypertension or was currently drinking alcohol. He explained that Mr. DeGraffenreid's cholesterol level was elevated due to his dehydrated condition when he was found lying in his truck three days after he had the stroke. He also testified that the history of hypertension and alcohol consumption that Mr. DeGraffenreid gave after the stroke, at a time when he was confused, did not appear to be accurate.

Dr. Lee considered Mr. DeGraffenreid's other risk factors and concluded that the stress of Mr. DeGraffenreid's job was a substantial factor in causing the stroke. Dr. Lee testified, "The stress of driving too far, too long, and under too much pressure is what precipitated the increase in [Mr. DeGraffenreid's] vascular blood pressure, the blood pressure and the pulse, which caused the stroke." Dr. Lee opined that Mr. DeGraffenreid's increased blood pressure and pulse caused the rupture of preexisting plaque in the right internal carotid artery, which formed a clot that blocked the blood flow to his brain. This blockage caused a severe injury to Mr. DeGraffenreid's brain.

The testimony of these witnesses, which the Commission found to be credible, is substantial and competent evidence that Mr. DeGraffenreid's injury arose out of his employment. There is substantial and competent evidence to support a finding that all of the requirements of § 287.020.3(2) have been met. The testimony from Dr. Lee, which the Commission found credible and persuasive, was sufficient proof that the stress from Mr. DeGraffenreid's employment was a substantial factor in causing his stroke. There was extensive evidence that Mr. DeGraffenreid was driving in violation of the federal regulations and that he kept two sets of logs to conceal that fact, and Hannah Trucking's own expert witness admitted that these are stressful circumstances. This evidence supports the finding that his injury followed as a natural incident of his work and can fairly be traced to his employment as the proximate cause. While Mr. DeGraffenreid had a number of risk factors for stroke, the expert testimony of Dr. Lee establishes that the stroke Mr. DeGraffenreid suffered on March 22, 1994, did not come from a hazard or risk unrelated to Mr. DeGraffenreid's employment to which he would have been equally exposed outside of and unrelated to his employment. It came from the stressful conditions of his work. Contrary to Hannah Truck's claim, there was substantial and competent evidence in the record that Mr. DeGraffenreid's injury arose out of his employment, as required by the definition of "injury" in § 287.020.3.

 Nor is the finding that Mr. DeGraffenreid's injury arose out of his employment against the weight of the evidence. Under the second step of the *Davis* review process, this court considers "all evidence in the record, including that which opposes or is unfavorable to the award," and determines whether the Commission's award is against the overwhelming weight of the evidence. 903 S.W.2d at 571. *See also Circo v. A–Cord Elec.*, 969

S.W.2d 228, 234 (Mo.App.1998). " 'Weight of the evidence' means its weight in probative value, not the quantity or amount of evidence. Weight of the evidence is not determined by mathematics, but on its effect in inducing belief." *Pendergrass v. Killian Constr. Co.*, 891 S.W.2d 166, 167 (Mo.App.1995) (citations omitted). "[T]he phrase 'overwhelming weight of the evidence' connotes evidence that is more persuasive than that which is merely 'of greater weight or more convincing than the evidence which is offered in opposition to it.' " *Vaught v. Vaughts, Inc./S. Mo. Constr.*, 938 S.W.2d 931, 941 (Mo.App. 1997).

 In examining the contrary evidence, this court considers the credibility determinations of the Commission. *Davis*, 903 S.W.2d at 571. In cases where the Commission has reversed the findings and award entered by the ALJ, however, the ALJ's findings "are an important part of the whole record, 'carry considerable weight, especially where there is a question as to the credibility of witnesses,' and should be given due consideration along with all the other facts and circumstances of the case." *Id.* at 569 (quoting *Banks v. City of Hannibal*, 283 S.W.2d 909, 913 (Mo.App.1955)). In determining the weight that the ALJ's findings should receive, the *Davis* court stated:

> Because the ALJ's findings and credibility determinations are part of the record as a whole, when the Commission's determinations as to the credibility of witnesses who gave live testimony before the ALJ are different from those made by the ALJ, the ALJ's contrary findings must be given due consideration, bearing in mind that evidence supporting a conclusion may be less substantial when an impartial, experienced ALJ who has observed the witnesses and lived with

the case has drawn conclusions different from the Commission's.

*Davis*, 903 S.W.2d at 570–71.

Here, the primary evidence contrary to the award was the testimony of the two experts for Hannah Trucking. Dr. David Meyers testified that Mr. DeGraffenreid had several risk factors that led to his stroke. Those factors included: age, male gender, heredity, hypertension, cigarette smoking, alcohol use, high cholesterol, carotid artery stenosis, elevated fibrinogen, infection, inflammation, and ankle brachial index abnormality. Dr. Meyers stated that Mr. DeGraffenreid was at twice the risk of having a stroke as other people. Dr. Meyers concluded that the cause of Mr. DeGraffenreid's stroke was hypertension and infection. Dr. Donohoe also testified that Mr. DeGraffenreid was at a great risk for a stroke. In addition, Dr. Donohoe testified that stress was not the major issue in Mr. DeGraffenreid's stroke from the standpoint of clinical neurology. Because Dr. Meyers, Dr. Donohoe, and Dr. Lee testified by deposition and did not appear live in front of the ALJ, "the Commission could determine [their credibility] from the written record equally well as' the ALJ." *Id.* at 573 (quoting *Frazier v. National Bearing Div., Am. Brake Shoe Co.*, 250 S.W.2d 1008, 1011 (Mo.1952)). The Commission chose to believe Dr. Lee's testimony rather than Dr. Meyers' and Dr. Donohoe's.

Additionally, portions of Ms. Green's testimony were also unfavorable to the award. Based upon the incomplete set of records, she testified that she could not tell whether Mr. DeGraffenreid was driving in excess of federal regulations and that she did not believe that Mr. DeGraffenreid was keeping two sets of logs. Because Ms. Green testified live before the ALJ this court will give due consideration to the ALJ's credibility determination.

Some testimony from Mr. DeGraffenreid's family is argued as contrary to the evidence. His wife and children testified that they did not know that Mr. DeGraffenreid was keeping two sets of logs to hide the fact that he was driving more than federal regulations allowed. They also testified that they did not believe that he would violate the law. Mr. DeGraffenreid's wife also testified that she had not observed that her husband appeared stressed. That Mr. DeGraffenreid did not confide in his family that he was violating the law, and that he was acting contrary to their expectations of him, was evidence of circumstances that would have contributed to his stress, rather than evidence that he was not suffering from stress. While Mr. DeGraffenreid's wife testified that he did not have any particular or unusual stresses on the job, she also testified that he had complained of not coming home enough and not having enough time to make his runs. Mr. DeGraffenreid's family testified before the ALJ. Therefore, this court will give the ALJ's credibility determination due consideration.

While there was evidence in the record that was unfavorable to the award, this court finds that the evidence contrary to the award was not more persuasive than contrary evidence and not more convincing than the evidence favorable to the award. Accordingly, the Commission's award is not against the overwhelming weight of the evidence.

### Conclusion

There was sufficient evidence in the record to support the application of the spoliation doctrine against Hannah Trucking. The Commission misapplied the spoliation doctrine, however, by using it to prove the estate's claim. Despite the fact that the Commission misapplied the spoliation doctrine, its remaining findings of fact compel the legal conclusion that the estate was entitled to the award of benefits for Mr. DeGraffenreid's injury. And there was sufficient evidence that Mr. DeGraffenreid's injury arose out of his employment. Namely, the documentary evidence and the testimony of Ms. Green, Mr. Thompson, Dr. Donohoe and Dr. Lee established that Mr. DeGraffenreid's injury arose out of his employment because he was driving in excess of federal regulations and the resulting stress was a substantial factor in his stroke. Therefore, the Commission's award of workers' compensation benefits is not erroneous and the award is affirmed.

All concur.